# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA FRIAS, | Case No.: 1:20-cv-00097-JLT |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S APPEAL (Docs. 19, 22) |
| v. | ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF, MARGARITA FRIAS, AND AGAINST DEFENDANT, ANDREW SAUL, THE COMMISSIONER OF SOCIAL SECURITY |

Margarita Frias asserts she is entitled to disability insurance benefits, supplemental security income, and a period of disability under Title II and Title XVI of the Social Security Act. Plaintiff asserts the administrative law judge erred by rejecting the opinion of Plaintiff's treating physician without specific and legitimate reasons, and by rejecting the opinion of a physician assistant without proper evaluation. (Doc. 19). For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In May 2016, Plaintiff filed two applications for benefits. She asserted disability beginning February 14, 2008, due to physical impairments including a heart murmur, muscle pain, high blood pressure, and arthritis. (*See* Doc. 11-1 at 71, 89). The applications were denied by the Social Security

Administration initially on December 6, 2016 and upon reconsideration on April 10, 2017. (*See id.* at 19). Plaintiff requested an administrative hearing on the application and a video hearing before an ALJ was held on December 18, 2018. (Doc. 11-1 at 40). The ALJ found Plaintiff was not disabled and issued an order denying benefits on January 30, 2019. (*Id.* at 19-34). Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on November 18, 2019. (*Id.* at 5). Thus, the ALJ's determination became the final decision of the Commissioner of Social Security. Plaintiff now appeals to this Court.

## **STANDARD OF REVIEW**

The district court has a narrow scope when reviewing the Commissioner's final decision. The decision to deny a claimant benefits under the Social Security Act will only be remanded if it is based on legal error or is not supported by substantial evidence. *See* 42 U.S.C.§ 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence" is "more than a mere scintilla", *Richardson v. Perales,* 402 U.S. 389, 401 (1971), but "less than a preponderance", *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is initially on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of

disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner is governed by a sequential five-step process for determining a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity; (2) had medically determinable severe impairments; (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listings"); and whether Plaintiff (4) had the residual functional capacity to perform past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level, considering the claimant's residual functional capacity, age, education, and work experience. (*Id.*). The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ first determined Plaintiff had "not engaged in substantial gainful activity since February 14, 2008, the alleged onset date." (Doc. 11-1 at 21). Second, the ALJ found Plaintiff's severe impairments included: "chronic cervical musculoligamentous strain/sprain associated with some degenerative changes of the cervical spine area; chronic lumbosacral musculoligamentous strain/sprain associated with grade 1 anterolisthesis L5-S1; mild to moderate tricuspid regurgitation and trivial aortic regurgitation; mitral valve insufficiency; [and] chronic obesity." (*Id.*). At step three, the ALJ determined Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.* at 22). Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: She is able to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. She can sit, stand and walk six hours in an eight-hour workday with normal breaks. She can frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. She can work in environments with no concentrated exposure to extreme cold. She can perform occasional overhead reaching bilaterally. She would need an extra break of 10 minutes in addition to the normal morning, afternoon and lunch break, and would be absent once per month.

(*Id.* at 23). The ALJ determined at step four that Plaintiff "has no past relevant work." (*Id.* at 32). However, at step five, the ALJ determined with the above residual functional capacity, "there are "jobs

that exist in significant numbers in the national economy that the claimant can perform." (*Id.*). These jobs included small products assembler, photocopy machine operator, and office helper. (*Id.* at 33). Thus, the ALJ concluded Plaintiff was "not… under a disability, as defined by the Social Security Act, from February 14, 2008, through the date of this decision." (*Id.*).

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ erred by (1) improperly rejecting the opinion of Plaintiff's treating physician, Richard Thistle, M.D., without specific and legitimate reasons; and (2) rejecting the opinion of treating physician assistant, Nicole Maldonado, PA-C, without proper evaluation. (Doc. 19 at 1). In opposition, the Commissioner asserts that the final decision finding Plaintiff not disabled should be affirmed because the decision "met the substantial evidence standard of review, and was free from legal error." (Doc. 22 at 22).

**A.     Evaluation of the medical evidence**

In this circuit, there are three sources of medical opinions: treating, examining, and non-examining. *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009). Generally, the weight given to each of these opinions is on a sliding scale. A treating physician's opinion is afforded more weight than that of an examining physician, which is afforded more weight than that of a non-examining physician. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Further, an ALJ must consider the opinions of "other sources"— such as nurse practitioners, physician assistants, and social workers—who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1); *see also Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (describing circumstances when opinions from "other sources" may be considered acceptable medical opinions).

An ALJ need not take all medical opinions at "face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). For example, medical opinions that are "brief, conclusory, and inadequately supported by

medical findings" may be rejected by an ALJ. *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015).

To reject an uncontradicted opinion of treating physician, the Commissioner must provide "clear and convincing" reasons for doing so. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). A contradicted opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995), *as amended* (Apr. 9, 1996). When one opinion contradicts another, the Commissioner "must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956–57 (9th Cir. 2002). Because the Court must give deference to the ALJ's decision, the ALJ's resolution of the conflict will be upheld when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

Plaintiff asserts the ALJ erred by rejecting Dr. Thistle's opined limitations that Plaintiff cannot stand and walk for more than two hours per day without specific and legitimate reasons. (Doc. 19 at 1). Because this opinion was contradicted by examining physician, Dr. Van Kirk, and state agency medical consultant, Dr. Frye (*see* Doc. 11-1 at 100-02, 1026-27), the ALJ was required to identify specific and legitimate reasons for rejecting the limitations identified by Dr. Thistle. *See Lester*, 81 F.3d at 831. Additionally, Plaintiff asserts the ALJ erred by rejecting the opinion of Nicole Maldonado, PA-C, without proper evaluation. (Doc. 19 at 1). Because this opinion was not from an acceptable medical source, it may be discounted provided the ALJ gives "reasons germane to each source for doing so." *Medina v. Comm'r of Soc. Sec.*, No. 2:19-CV-1543-DMC, 2021 WL 1212667, at *8 (E.D. Cal. Mar. 31, 2021) (citing *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)).

1. Opinion of Nicole Maldonado, PA-C

On January 31, 2017, Ms. Maldonado completed a "Physical Residual Functional Capacity Medical Source Statement" on behalf of Plaintiff. (Doc. 11-1 at 921-24). Plaintiff's main complaints were "chronic pain to neck and back." (*Id.* at 921). She noted Plaintiff had pain in the cervical, thoracic, and lumbar spines "along paraspinal muscles," which worsened with movement. (*Id.*). According to Ms. Maldonado, Plaintiff's clinical findings and objective signs included: "[t]enderness along spinal

muscles." (*Id.*). Ms. Maldonado opined that Plaintiff could lift and carry up to five pounds rarely and could stand and walk for two hours out of an eight-hour workday. (*Id.* at 921-22). She determined that Plaintiff could not walk one block or more on rough or uneven ground, could not climb steps at a reasonable pace without use of a handrail, and has problems with stooping, crouching, bending, and balancing when ambulating. (*Id.* at 922). She believed that Plaintiff would need to lie down for two hours out of an eight-hour workday, could sit for two hours out of an eight-hour workday, and would need to take 10-minute unscheduled breaks every hour. (*Id.* at 922-23).

Ms. Maldonado further opined that Plaintiff does not have the ability to climb stairs, ladders, scaffolds, ropes, or ramps, and that her pain and stress are severe enough to occasionally interfere with the attention and concentration needed to perform simple work tasks. (Doc. 11-1 at 923). She also indicated Plaintiff would be off task 25% of the time and would likely be absent from work four days per month. (*Id.* at 924). Ms. Maldonado noted she based her opinions upon Plaintiff's medical history and file, progress and office notes, physical therapy reports, physical examinations, and x-rays. (*Id.*).

      *a.*      *The ALJ's evaluation of Ms. Maldonado's opinion*

The ALJ gave Ms. Maldonado's opinion "little weight" for three reasons. (Doc. 11-1 at 30-31). First, the ALJ explained Ms. Maldonado's identified limitations "were not supported by her physical examination findings of intact range of back motion." (*Id.* at 30, citing Exh. 6F, p. 8; 13F, p. 40 [Doc. 11-1 at 860, 970]). Additionally, the ALJ found the limitations were "inconsistent with the imaging reports." (*Id.* at 31, citing Exh. 6F, pp. 9-10 [Doc. 11-1 at 861-62]). Finally, the ALJ gave Ms. Maldonado's opinion less weight because she was not an "acceptable medical source." (*Id.* at 31).

Plaintiff argues the ALJ erred in rejecting Ms. Maldonado's opined limitations "without proper evaluation." (Doc. 19 at 11). The Commissioner asserts the ALJ properly accorded little weight to Ms. Maldonado's opinion because it was "not supported by the objective medical evidence," was "inconsistent with other evidence of record," and because Ms. Maldonado was not an acceptable source, the ALJ only needed to give germane reasons for discounting her opinion. (Doc. 22 at 15-20).

      *b.*      *Discounting opinions of "other sources"*

As an initial matter and as noted above, an ALJ must consider every medical opinion received, notwithstanding the source. 20 C.F.R. § 404.1527(c), (f)(1). However, "other sources", such as

physician assistants, are not subject to the same standard as an acceptable source. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Fields v. Comm'r of Soc. Sec.*, No. 2:18-CV-0001-DMC, 2019 WL 3003992, at *3 (E.D. Cal. July 10, 2019). Medical opinions from "other sources" may be given "less deference…if the ALJ gives reasons germane to each witness for doing so." *Revels*, 874 F.3d at 655. Additionally, in *Haagenson v. Colvin,* 656 F. App'x 800, 802 (9th Cir. 2016), the sole reason given for rejecting the opinion of an "other source" was that the nurse was not considered an acceptable medical source. The Ninth Circuit explained this notion is already presumed by regulation and is, therefore, not a germane reason on its own for rejecting the opinion. *Id.* Thus, because Ms. Maldonado was a physician assistant, the ALJ could reject the opinion provided he gave additional reasons for doing so.

            *c.*      *Inconsistencies with the medical record*

Plaintiff alleges that "two instances of intact back range of motion is not a germane reason for rejecting a physician assistant's opinion, because these records are not representative of the record as a whole." (Doc. 19 at 12-13). The Ninth Circuit determined that inconsistencies between an opinion and the medical record is a germane reason for rejecting the opinion. *See Popa*, 872 F.3d at 907 (holding the ALJ's comparison of two conflicting medical opinions not sufficient to meet the germane standard); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The ALJ stated that Ms. Maldonado's opinion was not supported by physical examination findings of intact back range of motion and that the opinion was inconsistent with the imaging reports. (*See* Doc. 11-1 at 30-31). The ALJ offered no explanation as to how the objective findings were inconsistent with Ms. Maldonado's opined limitations. (*See id.*). Specifically, the ALJ disregarded Plaintiff's history of neck pain and seems to have presumed all limitations opined by Ms. Maldonado related to Plaintiff's back range of motion. Ms. Maldonado indicated Plaintiff would need hourly breaks, would need to lie down for two hours out of an eight-hour workday, would suffer pain and stress severe enough to occasionally interfere with the attention and concentration needed to perform simple tasks, and would be absent from work four days per month. (*Id.* at 922-24). The ALJ did not address how any of these opined limitations related to intact back range of motion. (*See id.* at 30-31). Further, the ALJ cited to one imaging report in support of his finding of inconsistency with Ms. Maldonado's opined limitations. (Doc. 11-1 at 31, citing Exh. 6F, pp. 9-10 [Doc. 11-1 at 861-62]).

However, it is unclear what findings in the imaging report that the ALJ believed were inconsistent with Ms. Maldonado's opined limitations. For example, the imaging report noted "probable chronic fracture of the inferior endplate of T12" and "[d]egenerative changes are advanced for age." (Doc. 11-1 at 862). The ALJ failed to explain how Ms. Maldonado's limitations were inconsistent with these findings. In light of the failure to specify inconsistencies between the record and the limitations identified by Ms. Maldonado, the ALJ did not meet the burden of identifying a germane reason supported by the record to reject Ms. Maldonado's opinion.

2. Opinion of Dr. Richard Thistle

On July 30, 2018, Dr. Thistle completed a "Physical Residual Functional Capacity Medical Source Statement." (Doc. 11-1 at 1059-62). He noted Plaintiff's main complaints were "chronic daily pain," pain with range of motion of the cervical spine, and "flaking and inflammation of the scalp." (*Id.* at 1059). Plaintiff described her functional capacity as "constant cervical [and] lumbar pain" that is worsened with movement and limits her activities of daily living. (*Id.*). According to Dr. Thistle, Plaintiff's most significant clinical findings and objective signs were: "[t]enderness along left cervical and left lumbar muscles, popping of cervical neck [with range of motion], scalp inflammation over frontal scalp, [and] loud cardiac murmur." (*Id.*). Dr. Thistle opined that Plaintiff could lift and carry up to five pounds rarely and could stand and walk for two hours out of an eight-hour workday. (*Id.* at 1059-60). He believed Plaintiff could not walk one block or more on rough or uneven ground; could not climb steps at a reasonable pace without use of a handrail; and had problems with stooping, crouching, bending, and balancing when ambulating. (*Id.* at 1060). He determined that Plaintiff would need to lie down for two hours out of an eight-hour workday, could sit for two hours out of an eight-hour workday, and would need to take 10-minute unscheduled breaks every hour. (*Id.* at 1060-61).

Dr. Thistle further opined Plaintiff did not have the ability to climb stairs, ladders, scaffolds, ropes, or ramps; and that her pain and stress were severe enough to occasionally interfere with the attention and concentration needed to perform simple work tasks. (Doc. 11-1 at 1061). He also believed Plaintiff would be off task 25% of the time, would likely be absent from work four days per month; unable to complete an eight-hour workday, five days or more per month; and she could be expected to perform her work 60% as efficiently as an average worker. (*Id.* at 1062). Dr. Thistle indicated that he

based these opinions upon progress and office notes, physical therapy notes, physical examinations, and imaging reports. (*Id.*).

### a. *The ALJ's evaluation of Dr. Thistle's opinion*

In addressing the medical evidence, the ALJ gave Dr. Thistle's opinion "little weight" for two reasons. (Doc. 11-1 at 31). The ALJ explained, "Although medical records noted Dr. Thistle was [the] primary physician, several medical visit notes showed examinations by other providers and it was unclear as to how long he personally treated/examined the claimant." (*Id.*, citing Exh. 6F, 13F, 14F, and 18F [Doc. 11-1 at 849-97, 927-1017]). In addition, the ALJ found Dr. Thistle's limitations were "inconsistent with the physical examinations and imaging reports as well as evidence that shows she reported relief with conservative treatment and her reported activities." (*Id.* at 31).

Plaintiff argues the ALJ "failed to follow the regulations" by rejecting Dr. Thistle's opinion without setting forth specific and legitimate reasons. (Doc. 19 at 9). The Commissioner asserts the ALJ properly accorded little weight to Dr. Thistle's opinion because it was "not supported by the objective medical evidence," was "inconsistent with other evidence of record," and little evidence showed he treated Plaintiff "for any length of time." (Doc. 22 at 15-19, 20-22).

### b. *Treatment relationship*

In determining the weight to give medical opinion evidence, the ALJ may consider the nature and extent of the treatment relationship. *See* 20 C.F.R. § 404.1527(c)(2); *see also Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion); *Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant] was a specific and legitimate reason to assign little weight" to the treating physician's opinion). However, a limited treatment relationship cannot alone support the rejection of a treating physician's opinion. *Rodriguez v. Berryhill*, No. 1:15-CV-01780-SKO, 2017 WL 896304 (E.D. Cal. Mar. 7, 2017); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (while a limited treating relationship may be a valid reason for not giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them"). Thus, this factor alone cannot support the ALJ's decision to reject Dr. Thistle's opined limitations.

The Ninth Circuit indicated that a physician who treats a patient even only once may be

considered a treating source when the physician's opinion represents both personal knowledge of a patient's condition and information communicated by other members of a treating team. *See Benton*, 331 F.3d at 1039. The ALJ recognized that Dr. Thistle was listed as Plaintiff's primary physician in medical records but noted "several medical visit notes showed examinations by other providers and it was unclear as to how long he personally treated/examined the claimant." (Doc. 11-1 at 31, citing Exh. 6F; 13F; 14F; 18F [Doc. 11-1 at 849-97, 927-1017]). Defendant cites to one treatment note of record in which Dr. Thistle was the listed provider, for a telephonic prescription refill request. (Doc. 22 at 21, citing Exh. 14F, p. 16 [Doc. 11-1 at 993]). Plaintiff cites to a referral for physical therapy in which Dr. Thistle was the listed referring provider. (Doc. 19 at 10, citing Exh. 7F, p. 1 [Doc. 11-1 at 902]).

Plaintiff cites to various treatment notes bearing Dr. Thistle's electronic signature, contending it is "extremely unlikely" that Dr. Thistle would sign records "if he were not personally involved in the patient's medical care." (Doc. 19 at 10). Regardless, Dr. Thistle stated the frequency and length of contact with Plaintiff was every three months for four years, and that he based his opinion upon progress and office notes, physical therapy reports, physical examinations, and imaging reports. (Doc. 11-1 at 1059, 1062). Consequently, the record does not support the ALJ's assertion that it was "unclear" how long Dr. Thistle treated Plaintiff, and Dr. Thistle's opinions were entitled to the weight of a treating physician. The frequency of treatment from Dr. Thistle does not support the ALJ's decision to give less weight to the opinion.

   *c. Inconsistencies with the medical record*

An ALJ may reject the opinions of a physician when they are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). However, to do so, "[t]he ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). This burden can be met by the ALJ "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Swanson v. Secretary,* 763 F.2d 1061, 1065 (9th Cir. 1985); *Magallanes,* 881 F.2d at 751.

The ALJ likened the inconsistencies noted in rejecting Ms. Maldonado's opinion to those of Dr.

Thistle's. (*See* Doc. 11-1 at 31). However, as established above, the ALJ did not meet the "germane reasons" standard required of "other sources" in order to properly reject Ms. Maldonado's opined limitations. To the extent this lower standard has not been met for inconsistencies with the physical examination and imaging report findings, the higher standard—requiring specific and legitimate reasons to reject a medical opinion— has likewise not been satisfied. *See Revels*, 874 F.3d at 654-55 (explaining the specific and legitimate standard requires more deference than the germane standard).

Furthermore, the Ninth Circuit has held that an ALJ must do more than offer conclusions when rejecting a medical opinion. *See Embrey*, 849 F.2d at 421–22 ("He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). In *Embrey*, the ALJ gave the following reasons for rejecting a treating physician's opinion:

> The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings. The duration of the claimant's stress treadmill testings and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work for any period approaching 12 months.

*Id.* at 421. The ALJ in *Embrey* cited to specific instances in the record that led to a finding of an RFC for light work. Nevertheless, the Court found the ALJ failed to meet the burden of establishing specific and legitimate reasons for rejecting the opinion. *Id.* The Court reasoned, "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Id.*

Similarly, the ALJ found Dr. Thistle's opined limitations were "inconsistent with the physical examinations and imaging reports…" (Doc. 11-1 at 31). The ALJ found the opined limitations were inconsistent with physical examination findings of "intact back range of motion." (*Id.* at 30, citing Exh. 6F, p. 8; 13F, p. 40 [Doc. 11-1 at 860, 970]). Additionally, the ALJ noted the limitations were "inconsistent with findings of the imaging reports." (*Id.* at 31, citing Exh. 6F, p. 9-10 [Doc. 11-1 at 861-62]).

Plaintiff asserts "the ALJ failed to acknowledge that the record contains significant evidence supportive of Dr. Thistle's opinion…" (Doc. 19 at 10). Plaintiff cited to treatment notes from Family

11

Health Services Clinic alleged to be consistent with Dr. Thistle's opinion (*Id.* at 11). A progress note from 2015 reported neither subjective complaints or examination of the back, and neck pain with full range of motion. (Doc. 11-1 at 884). Two progress notes from 2016 reported neck and back pain with range of motion, but full back range of motion. (*Id.* at 858, 860). Progress notes from 2017 again did not reference Plaintiff's back but indicated neck pain with decreased range of motion. (*Id.* at 942-50). Finally, in 2018, a progress note reported cervical and lumbar pain with range of motion, popping of the cervical spine, and inability to look to the left due to cervical neck pain. (*Id.* at 1068).

Dr. Thistle indicated Plaintiff would need hourly breaks, would need to lie down for two hours out of an eight-hour workday, would suffer pain and stress severe enough to occasionally interfere with the attention and concentration needed to perform simple tasks, and would be absent from work five or more days per month. (Doc. 11-1 at 1060-62). Additionally, Dr. Thistle observed Plaintiff exhibited pain and popping of the cervical neck with range of motion. (*Id.* at 1059).

Although the ALJ purported to rely on conflicts with the medical record, the ALJ did not offer any explanation, nor did he in any way relate the findings from the imaging report or the exam findings of normal back range of motion to Dr. Thistle's opined limitations. For example, as with addressing the limitations identified by Ms. Maldonado, the ALJ did not explain how findings of intact back range of motion conflicted with Dr. Thistle's limitations on Plaintiff's ability to sit, stand, walk, concentrate, or complete a workday. Additionally, as discussed above, the ALJ failed to explain how Dr. Thistle's limitations were inconsistent with the imaging report he cited, which noted "probable chronic fracture of the inferior endplate of T12" and "[d]egenerative changes are advanced for age." (Doc. 11-1 at 862). Further, the ALJ does not acknowledge Dr. Thistle's observation of popping with range of motion.

The ALJ should clearly explain how identified findings conflict with specific limitations and not leave it to the Court to speculate as to the basis of his opinion. Without more, the ALJ failed to meet the level of specificity required by the Ninth Circuit to reject a treating physician's opinion as conflicting with other medical opinions. *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify the rejection of an opinion); *see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (the ALJ has a burden to "set

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *Allen*, 749 F.2d at 579 ("it is the ALJ's role to … resolve the conflict").

Because the ALJ failed to address which evidence he believed conflicted with the limitations identified by Dr. Thistle, this factor does not support the decision to give "little weight" to the opinion of Plaintiff's treating physician as inconsistent with the physical examinations and imaging reports.

### d. *Inconsistencies with reported relief and activities*

The ALJ indicated the limitations identified by Dr. Thistle were rejected, in part, as "inconsistent with… evidence that showed [Plaintiff] reported relief with conservative treatment and her reported activities." (Doc. 11-1 at 31). An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), provided the ALJ gives specific and legitimate reasons for rejecting the opinion. *Morgan,* 169 F.3d at 600-602 (concluding inconsistencies between a plaintiff's daily activities and a treating physician's opinion were a specific and legitimate reason in discounting the opinion); *see also Shephard v. Berryhill,* 722 F. App'x 641, 643 (9th Cir. 2018).

Plaintiff noted that at the hearing, she testified that "her pain has not improved her since her injury…, medications were inadequate to relieve her pain…, and records show she reported no improvement with physical therapy." (Doc. 19 at 11, internal citations omitted). In addition, Plaintiff asserts she testified that "she is only able to engage in daily activities depending on her pain, and she often requires help form her husband and children to do basic daily chores such as cooking or cleaning." (Doc. 19 at 11, citing AR 50-51 [Doc. 11-1 at 54-55]). Plaintiff argued the "ALJ failed to explain how these limited activities contradict Dr. Thistle's opinion in any way, and the ability to perform a limited degree of daily activity is not inconsistent with disability." (*Id.*, citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)).

Notably, Plaintiff observes, the ALJ did not cite any evidence in the record to support his conclusion that Plaintiff reported relief with conservative treatment or identify which of "her reported activities" that were inconsistent with the limitations. (*See* Doc. 11-1 at 31). Although the Commissioner refers to Plaintiff's "demonstrated activities, as evinced … by a state worker's

13

compensation surveillance video" (Doc. 22 at 12), the ALJ did not reference the activities recorded in the video in analyzing the limitations from Dr. Thistle. (*See* Doc. 11-1 at 31). The ALJ merely mentioned the video in his summary of the medical record and made no findings as to whether the limitations identified by Dr. Thistle were inconsistent with the level of activity portrayed in the video. Because the Court is constrained to review only the reasoning asserted by the ALJ, any purported inconsistency between the video footage and the limitations identified by Dr. Thistle does not support the ALJ's decision to reject the limitations. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts" and finding error were the court affirmed the ALJ's decision "based on evidence that the ALJ did not discuss" related to an issue).

The Ninth Circuit explained the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking" and cannot affirm on rationale that was not articulated by the ALJ. *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009). Because the ALJ failed to identify evidence supporting his conclusions—and the Court is unable to speculate regarding the unidentified inconsistencies—this factor does not support the ALJ's decision to reject limitations identified by Dr. Thistle.

### 3. Conclusion

The ALJ failed to identify germane reasons for rejecting limitations identified by Ms. Maldonado. Similarly, the ALJ failed to identify specific and legitimate reasons, supported by the record, to reject limitations identified by Dr. Thistle. Thus, the ALJ erred in his evaluation of the medical evidence.

## B. Remand is appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by both a physician assistant and treating physician. Because the ALJ failed to resolve the conflicts in the record regarding the opinions and the evidence, the matter should be remanded for the ALJ to re-evaluate the medical record and identify evidence that supports his conclusions and the weight given to the opinions. *See Moisa*, 367 F.3d at 886.

**CONCLUSION AND ORDER** For the reasons set forth above, the Court finds the ALJ erred in rejecting the opinions of Ms. Maldonado and Dr. Thistle. Consequently, the ALJ's decision cannot be upheld. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987). Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the decision denying benefits (Doc. 19) is **GRANTED**;
2. The Commissioner's request to affirm the decision (Doc. 22) is **DENIED**;
3. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
4. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff, Margarita Frias, and against Defendant, Andrew Saul, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 5, 2021** _____ /s/ **Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE